IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERNEST SMALIS,

    Appellant,

        v.

CITY OF PITTSBURGH SCHOOL
DISTRICT, ALLEGHENY COUNTY
BOARD OF PROPERTY ASSESSMENT
APPEALS & REVIEW, CITY OF
PITTSBURGH LAW DEPARTMENT and
ALLEGHENY COUNTY LAW
DEPARTMENT,

    Appellees.

16cv0693
**ELECTRONICALLY FILED**

## MEMORANDUM ORDER

Before the Court is an appeal from the United States Bankruptcy Court for the Western District of Pennsylvania filed by *pro se* Appellant, Ernest Smalis (hereafter, "Smalis"). *See* Doc. No.1. Smalis, the former spouse of Debtor Despina Smalis (hereafter, "Debtor"), initiated Adversary Action No. 15-2182 against the City of Pittsburgh School District, the Allegheny County Board of Property Assessment Appeals & Review, the City of Pittsburgh Law Department, and the Allegheny County Law Department (collectively, "Appellees") for recoupment of certain real estate taxes and to redress the alleged violation of his federal due process rights. The Bankruptcy Court dismissed the adversary action on April 25, 2016 for lack of subject matter jurisdiction. Smalis then filed a motion for reconsideration, followed by a motion to strike the April 25 Order of dismissal. The Bankruptcy Court denied these motions on May 11 and May 19, 2016, respectively.

This appeal followed. For the reasons set forth below, this Court will affirm the April 25, May 11, and May 19, 2016 Orders of the Bankruptcy Court.

## I. Jurisdiction and Standard of Review

This Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. § 158(a). A district court sits as an appellate court in bankruptcy proceedings. *In re Michael*, 699 F.3d 305, 308 n.2 (3d Cir. 2012); *see also In re Professional Management*, 285 F.3d 268 (3d Cir. 2002) (a district court's jurisdiction is proper as an appeal of the final order of the bankruptcy court under 28 U.S.C. §158(a)).

On appeal from a final order entered by a bankruptcy court, the district court applies the following standards of review:

First, the court reviews a bankruptcy court's findings of fact under a "clearly erroneous" standard. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir.1999). A factual finding is "clearly erroneous" if the reviewing court is "left with a definite and firm conviction that a mistake has been committed." *In re W.R. Grace & Co.*, 729 F.3d 311, 319, n.14 (3d Cir. 2011); *see also Gordon v. Lewistown Hosp.*, 423 F.3d 184, 201 (3d Cir. 2005). Under this standard, the reviewing court must "accept ultimate factual determinations of the factfinder "unless that determination is either (1) completely devoid of minimum evidentiary support displaying some hue of credibility or (2) bears no rational relationship to the supportive evidentiary data." *DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir. 2000) (internal quotations and citations omitted).

Second, the court exercises plenary, or *de novo*, review over any legal conclusions reached by the bankruptcy court. *In re Ruitenberg*, 745 F.3d 647, 650 (3d Cir. 2014); *see also Am. Flint Glass Workers*, 197 F.3d at 80.

Third, if a bankruptcy court's decision is a mixed question of law and fact, the district court must

break down the determination and apply the appropriate standard of review to each. *In re Montgomery Ward Holding Corp.*, 326 F.3d 383, 387 (3d Cir. 2003). The court should "apply a clearly erroneous standard to integral facts, but exercise plenary review of the [bankruptcy] court's interpretation and application of those facts to legal precepts." *In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011) (citation omitted).

Fourth, a bankruptcy court's exercise of discretion is reviewed for abuse. *In re Friedman's Inc.*, 738 F.3d 547, 552 (3d Cir. 2013). A bankruptcy court abuses its discretion when its ruling rests upon an error of law or a misapplication of law to the facts. *In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999).

## II. Factual and Procedural History

Pertinent aspects of the underlying bankruptcy proceedings were aptly summarized as follows by the Bankruptcy Court in its April 25, 2016 Memorandum Opinion:

> The above-captioned bankruptcy case was commenced by Despina Smalis on September 2, 2005, by the filing of a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Within Debtor's Schedule A, she identified her interest in numerous properties, including 3224 Boulevard of the Allies, Pittsburgh, Pennsylvania ("Boulevard of the Allies Property") and 4073 Liberty Avenue, Pittsburgh, Pennsylvania ("Liberty Avenue Property").
>
> On **November 23, 2005**, the former Chapter 7 Trustee, Stanley G. Makoroff ("Trustee Makoroff") commenced an adversary proceeding seeking to sell the Boulevard of the Allies Property. *See* Adv. No. 05–3308. In that proceeding, Mr. Smalis, a co-owner, was named as a defendant. Mr. Smalis filed an answer and actively participated in the proceeding, which ultimately culminated in the sale of the Boulevard of the Allies Property for the amount of $1,350,000. *See* Adv. No. 05–3308, Doc. No. 19. On **August 8, 2006**, Trustee Makoroff filed a *Report of Sale* detailing, *inter alia*, the disbursements made at settlement for city, school, and county taxes as well as distributions to co-owners. *See* Adv. No. 05–3308, Doc. No. 23. The adversary proceeding has remained closed since 2006.

3

> On March 6, 2006, an Order was entered granting Debtor a discharge under 11 U.S.C. §727. On September 25, 2006, Trustee Makoroff filed the *Trustee's Final Report and Account of the Administration of the Estate and Final Application for Compensation.* *See* Case No. 05–31587, Doc. No. 92. Therein, Trustee Makoroff designated property to be abandoned pursuant to 11 U.S.C. § 554(c), which included the Liberty Avenue Property. In the *Notice of Filing of Final Account of Trustee Scheduling Hearing on Applications for Compensation, and Proposed Final Distribution Combined with Order Fixing Deadline for Filing Objections Thereto*, notice was also provided that "[a]ny property not administered by the trustee will be deemed abandoned." *See* Case No. 05–31587, Doc. Nos. 97 and 101 (showing service on Mr. Smalis). Thereafter, on November 2, 2006, Trustee Makoroff's proposed distribution was approved by the Court, which resulted in a surplus being paid to the Debtor. The bankruptcy case was closed on March 28, 2007.
>
> On the motion of the Commonwealth of Pennsylvania, Department of Environmental Protection ("DEP"), the case was reopened on October 30, 2008. Despite its reopening, the case remained inactive from that time until the filing of Mr. Smalis' *Complaint to Determine Dischargeability* on April 2, 2012. *See* Adv. No. 12–2140. A settlement was reached between Mr. Smalis and the Debtor, and Mr. Smalis consented to the dismissal of the adversary proceeding. As part of the settlement, the Debtor released her interest in the Liberty Avenue Property to Mr. Smalis.[ ] The adversary proceeding was closed following the settlement in November of 2012.[ ]
>
> The [underlying adversary] proceeding was commenced by Mr. Smalis on September 10, 2015, seeking a determination of real estate tax liability and recoupment of funds resulting from alleged overpayment to the taxing bodies. Within his Complaint, Mr. Smalis specifically references two pieces of property, the Boulevard of the Allies Property and the Liberty Avenue Property. Based on this Court's extensive familiarity with this case and the record, on September 22, 2015, this Court entered an Order setting a hearing and advising that the Complaint may be dismissed at that time for the reasons set forth therein....

Doc. No. 1-10 at pp. 2-4 (internal footnotes omitted).

The instant adversarial proceeding arises from Smalis' complaint that, during the time period 2000 to 2009, while Smalis was serving a prison sentence, the relevant taxing authorities failed to send him assessment notices for the Boulevard of the Allies Property and the Liberty Avenue Property and thereby denied him an opportunity to challenge those assessments as provided by Pennsylvania law. (*See* Doc. No. 3 at p.10 of 28; *see also* Doc. Nos. 3-2 and 3-3.

4

The record shows that, upon his release from prison in 2010, Smalis successfully challenged the assessment of the Liberty Avenue Property relative to tax year 2010. *See* Doc. 3-5. Smalis then attempted, unsuccessfully, to challenge the assessment for the years 2000 through 2009, *nunc pro tunc*. The Allegheny County Court of Common Pleas denied his request, and the Pennsylvania Commonwealth Court affirmed on the ground that Smalis had failed to act with reasonable diligence. *See Smalis v. Allegheny Cty. Bd. of Prop. Assessment,* No. 74 C.D. 2012, 2013 WL 3946234, at *3 (Pa. Commw. Ct. Feb. 22, 2013). The Pennsylvania Supreme Court subsequently denied allocatur. *See Smalis v. Allegheny Cty. Bd. of Prop. Assessment*, No. 216 WAL (2013), 77 A.3d 638 (Pa. 2013) (Table Case).

Smalis did not pursue his Pennsylvania action further by attempting to appeal the denial of allocatur to the United States Supreme Court. Instead, he filed a civil rights action in the United States District Court for the Western District of Pennsylvania in which he alleged that the taxing authorities violated his equal protection and due process rights by failing to give him notice of the tax assessments. *See Smalis v. Allegheny Cty. Bd. of Property Assessment, Appeal & Review, et al,* Case No. 13-1646, 2014 WL 2039964 (W.D. Pa. May 16, 2014) (unreported version appended to Smalis' Br. at Doc. No. 3-6). On consideration of the defendants' various motions to dismiss, Magistrate Judge Kelly dismissed the case for lack of subject matter jurisdiction. In her opinion, Magistrate Judge Kelly opined that, while the *Rooker-Feldman* doctrine[1] did not preclude the court from exercising subject matter jurisdiction, the Tax Injunction Act[2] did. *See* 2014 WL 2039964, at *5-8. On appeal, the United States Court of

---

[1] The doctrine derives from two opinions issued by the United States Supreme Court, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and recognizes that "federal courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

[2] *See* 28 U.S.C. § 1341.

Appeals for the Third Circuit affirmed Magistrate Judge Kelly's decision to dismiss Smalis's complaint pursuant to the Tax Injunction Act. *See Smalis v. Allegheny Cty. Bd. of Prop. Assessment*, 632 F. App'x 78 (3d Cir. 2016).

Meanwhile Smalis commenced the instant adversarial proceeding in the Bankruptcy Court. In this proceeding, as in his other litigation, Smalis sought a determination of his real estate liability relative to the Boulevard of the Allies Property and the Liberty Avenue Property, recoupment of an alleged overpayment of property taxes and/or exoneration of existing tax liens, and a determination that his due process rights had been violated. By Memorandum Opinion and Order dated April 25, 2016, the Bankruptcy Court dismissed Smalis' adversary proceeding for lack of subject matter jurisdiction. Doc. Nos. 1-10 and 1-11. The Bankruptcy Court noted that, in order for subject matter jurisdiction to exist, Smalis' claims would have to be at least "related to" the Debtor's bankruptcy case. *See* Doc. 1-10 at p. 5 (citing *Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.,* 505 F.3d 237, 257 (3d Cir. 2007)). The Bankruptcy Court dismissed Smalis' claims because it concluded that the claims lacked the requisite relation to the underlying bankruptcy case.

On May 6, 2016 Smalis filed a motion for reconsideration of the Bankruptcy Court's April 25, 2016 ruling, *see* Doc. 1-13, which was denied on May 11, 2016. *See* Doc. 1-22. In its Order, the Bankruptcy Court found that Smalis had failed to establish any basis for relief under Federal Rules of Civil Procedure 59(e) or 60(b), and his assertions of "mistake" on the part of the Bankruptcy Court "appear[ed] to be nothing more than dissatisfaction and disagreement with the Court's conclusions." (*Id.* at 2.)

Smalis then filed a document styled "Motion for Consideration to Strike a Defective and Void Order on [Newly] Discovered Evidence Pursuant to Fed. R. Civ. P. 60(b)." *See* Doc. 1-23.

6

The Bankruptcy Court denied this motion on May 19, 2016, noting that Smalis was using the motion as "another opportunity to make many of the same arguments previously raised in his complaint and the prior motion for reconsideration." Doc. 1-27 at ¶4. To the extent Smalis had raised new arguments, the Bankruptcy Court found no basis for reconsideration. *Id.*

On May 26, 2016, Smalis filed the instant appeal from the Bankruptcy Court's Orders of April 25, 2016, May 11, 2016, and May 19, 2016. The central question raised in this appeal is whether the Bankruptcy Court erred in ruling that it lacked subject matter jurisdiction over Adversary Action No. 15-2182.

### III. Legal Analysis

"Like all federal courts, bankruptcy courts are courts of limited subject-matter jurisdiction." *In re Hertzberg*, No. ADV 14-2141-JAD, 2014 WL 6382951, at *1 (Bankr. W.D. Pa. Nov. 13, 2014); *see also Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012) (Federal courts are "presumed not to have jurisdiction without affirmative evidence of this fact.") (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n. 3 (2006)). As the proponent of federal bankruptcy jurisdiction, Smalis has the burden of demonstrating that such jurisdiction exists. *Nuveen Mun. Trust,* 692 F.3d at 293 ("[T]he party asserting a federal court's jurisdiction bears the burden of proving that jurisdiction exists.") (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S.Ct. 1181, 1194 (2010)).

Pursuant to 28 U.S.C. §1334, bankruptcy courts have jurisdiction only in four types of proceedings, namely: (1) cases "under" title 11, that is, the bankruptcy petition; (2) proceedings "arising under title 11"; (3) proceedings "arising in" a bankruptcy case; and (4) proceedings "related to" a case under title 11. *See* 28 U.S.C. § 1334 [3]; *In re Exide Techs.*, 544 F.3d 196, 205

---

[3] Section 1334 states, in relevant part, as follows:

7

(3d Cir. 2008); *In re Combustion Eng'g, Inc*., 391 F.3d 190, 225 (3d Cir. 2005). The last category – proceedings "related to" a bankruptcy case – represents the broadest application of a bankruptcy court's subject matter jurisdiction. *See Geruschat v. Ernst Young LLP (In re Seven Fields Development Corp.)*, 505 F.3d 237, 257 (3d Cir. 2007). Thus, the Bankruptcy Court correctly noted that, for purposes of establishing its subject matter jurisdiction, Smalis' claims must be at least "related to" the underlying bankruptcy case. *See* Doc. 1-10 at p. 5.

In *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984), *overruled in part by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 124–25 (1995), the Court of Appeals established that a proceeding is "related to" a bankruptcy case if the "outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id*. at 994 (emphasis added). The "key inquiry" is "conceivability." *Nuveen Mun. Trust,* 692 F.3d at 294. "'Certainty, or even likelihood [of effect on the estate being administered in bankruptcy,] is not a requirement.'" *Nuveen Mun. Trust,* 692 F.3d at 294 (quoting *Copelin v. Spirco, Inc*., 182 F.3d 174, 179 (3d Cir.1999)) (alteration in original). "An action thus generally is 'related to' a bankruptcy proceeding 'if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" *Id.* (quoting *Pacor*, 743 F.2d at 994).

---

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

*See* 28 U.S.C. § 1334(a) and (b). The foregoing types of cases and proceedings may be referred by the district courts to bankruptcy courts pursuant to 28 U.S.C. § 157(a). This judicial district does so pursuant to a general standing order of reference. *See* Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc (W.D. Pa. Oct. 16, 1984).

In endorsing *Pacor's* "conceivability" standard, the Supreme Court has admonished that "related to" jurisdiction "cannot be limitless" and, thus, "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 & n.16 (1995); *see also Nuveen Mun. Trust,* 692 F.3d at 294. Nor does "related to" jurisdiction exist where another action would need to be filed before the subject action could affect a bankruptcy proceeding. *See in re W.R. Grace & Co.*, 591 F.3d 164, 172 (3d Cir. 2009); *In re Fed.-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002). Whether a proceeding could "conceivably" affect the bankruptcy estate "is determined at the time a lawsuit is filed." *Nuveen Mun. Trust,* 692 F.3d at 294 (citing authority).

"Generally, the adjudication of claims between non-debtor parties are not considered to [be]within a Bankruptcy court's "related to" jurisdiction." *In re ETFF Corp.*, 542 B.R. 180, 183 (Bankr. E.D. Pa. 2015)(citing *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 483 (6th Cir.1992); *In re Foundation for New Era Philanthropy*, 201 B.R. 382, 387 (Bankr. E D. Pa. 1996).). In this case, the Bankruptcy Court correctly concluded that Smalis' claims lacked the requisite "relation to" the underlying bankruptcy case, notwithstanding the fact that he and the Debtor had previously been co-owners of the properties in question. As of September 10, 2015 when the instant Adversary Action was filed, the estate had been fully administered.[4] As the Bankruptcy Court observed, neither the estate nor the Debtor have retained any interest in either the Boulevard of the Allies Property, which was sold during the underlying bankruptcy proceedings, or the Liberty Avenue Property, which was abandoned by

---

[4] Although the underlying bankruptcy case was reopened in 2008 in order to address a claim by the Pennsylvania DEP, that matter was resolved by the Bankruptcy Court's Order of March 5, 2014, which approved a settlement between the Debtor and the DEP. *See* Doc. 1-10 at p. 6 (citing Bankr. Case No. 05-31587, Doc. No. 193). The Bankruptcy Court noted that the Debtor's bankruptcy proceedings have remained open since that time "only due to the continuous and often duplicative filings of Mr. Smalis.[ ]" Doc. 1-10 at 6-7 (omitting footnote which details the various adversary proceedings that Smalis commenced between 2012 and 2015).

9

the estate and then transferred from the Debtor to Smalis in 2012 as part of a settlement in his prior adversary action against the Debtor (*see* Adversary Action No. 12-2140). The administration of the bankruptcy estate resulted in a surplus after distribution to creditors. Consequently, any recovery that Smalis might obtain as a result of his claims could not benefit other creditors.

To the extent that Smalis is bringing this adversarial action in his capacity as a putative creditor of his ex-wife,[5] it is noteworthy that he and the Debtor reached a settlement in Adversary Action No. 12-2140, which resolved all claims between them. *See* Doc. 1-10 at p. 7 (citing Mem. Op., Bankr. Case No. 05-31587, Doc. No. 236 at pp. 9-10). Pursuant to this settlement, Debtor transferred to Smalis any interest she had in the Liberty Avenue Property. Doc. 1-10 at p. 3 and n.1 (citing Adversary Action No. 12-2140, Doc. No. 62 at p. 4, 5 n.9.) Smalis has failed to demonstrate that he has grounds to obtain any further recovery from Debtor's estate.

To the extent Smalis purports to bring his adversarial action on behalf of the Debtor's estate, he has failed to demonstrate that he has standing to do so. "The third-party standing doctrine generally bars litigants in federal court from asserting the constitutional and statutory rights of others in an effort to obtain relief for injury to themselves." *In re Olick*, 571 F. App'x 103, 105 (3d Cir. 2014) (citing *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 643–44 (2d Cir.1988) (addressing third-party standing in the bankruptcy context)). The Supreme Court has articulated two important policies justifying this prudential limitation on the federal courts' jurisdiction: "[f]irst, the courts should not adjudicate [third-party] rights unnecessarily, and it

---

[5] The Bankruptcy Court previously noted in a separate Memorandum Opinion that Smalis' status as a creditor was "questionable at best" in light of the fact that he had "failed to file a claim prior to the bar date and entry of the Distribution Order, did not appeal or object to said Order being entered, and subsequently settled his alleged claims with the Debtor..." *See* Bankr. Case No. 05-31587, Doc. No. 236, at pp. 10 of 20.

may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not... Second, third parties themselves usually will be the best proponents of their own rights." *Singleton v. Wulff,* 428 U.S. 106, 113–14 (1976) (citations omitted). The "limits on third-party standing are particularly relevant to appellate standing in bankruptcy proceedings" because "[b]ankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party." *In re PWS Holding Corp.,* 228 F.3d 224, 248 (3d Cir. 2000); *see also In re WR Grace & Co.,* 729 F.3d 332, 340 (3d Cir. 2013). Here, the Court notes that neither the Debtor nor the current Trustee has sought to intervene or otherwise participate in the underlying adversary action. Nor does it appear that they have participated in any of the other litigation that Smalis has pursued relative to his due process and recoupment claims. Furthermore, as discussed, neither Debtor nor the estate has retained an interest in the commercial properties at issue. Thus, the Court finds no basis for concluding that Smalis has standing to prosecute the instant adversary proceeding on behalf of the Debtor or her estate.

In light of the foregoing considerations, the Bankruptcy Court was justified in surmising that "Mr. Smalis appears to be pursuing these claims for his own benefit in this forum only because he has been unable to obtain relief elsewhere." Doc. 1-10 at p. 7. Because there is no discernible benefit to the Debtor's estate if Smalis pursues his claims against the relevant taxing authorities, the Bankruptcy Court correctly concluded that it lacked subject matter jurisdiction over Smalis' claims for a determination of his tax liability and for recoupment of alleged overpaid taxes.

The lack of any "related to" jurisdiction is even more obvious with respect to Smalis' §1983 claims. Those claims seek redress for the violation of constitutional rights that are

11

personal to Smalis. As a result, any recovery that Smalis might obtain under §1983 would be payable directly to him and him alone. Thus, a dismissal of these claims on jurisdictional grounds was appropriate.

Notwithstanding, Smalis appears to be arguing that the Bankruptcy Court committed error when it "failed to acknowledge" Magistrate Judge Kelly's determination that the *Rooker-Feldman* doctrine did not apply to Smalis' § 1983 claims in Civil Action No. 13-1646. *See* Doc. 2-1 at p. 2, ¶4. To the extent Smalis believes that Magistrate Judge Kelly's ruling amounts to a finding of subject matter jurisdiction relative to his claims in this case, he is mistaken. As Magistrate Judge Kelly accurately observed:

> The *Rooker–Feldman* doctrine recognizes that jurisdiction to review a state court's decision rests solely in the United States Supreme Court, *see* 28 U.S.C. §1257. Accordingly, federal district courts lack subject matter jurisdiction over challenges that are the functional equivalent of an appeal of a state court judgment, *Marran v. Marran*, 376 F.3d 143, 149 (3d Cir.2004), "even if those challenges allege that the state court's action was unconstitutional," *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). "Under the *Rooker–Feldman* doctrine, a district court is precluded from entertaining an action, that is, the federal court lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir.2006) (citing *Whiteford v. Reed*, 155 F.3d 671, 674 (3d Cir.1998))....

Doc. No. 3-6 at p. 8, reported as *Smalis v. Allegheny Cty. Bd. of Prop. Assessment, Appeal & Review*, No. CIV.A. 13-1646, 2014 WL 2039964, at *5 (W.D. Pa. May 16, 2014), *aff'd sub nom. Smalis v. Allegheny Cty. Bd. of Prop. Assessment*, 632 F. App'x 78 (3d Cir. 2016). Thus, the *Rooker-Feldman* doctrine represents one aspect, but only one aspect, of the limits on federal court jurisdiction. Stated differently, the inapplicability of *Rooker-Feldman* is a necessary, but not sufficient, condition for the existence of federal subject matter jurisdiction. In Civil Action

No. 13-1646, the district court had original subject matter jurisdiction over Smalis' §1983 claim pursuant to 28 U.S.C. §1331, subject to other jurisdictional constraints.[6]

In this case, the Adversary Proceeding was commenced in the Bankruptcy Court, which has a more limited range of original subject matter jurisdiction than the district courts. As discussed, the Bankruptcy Court's jurisdiction is established and limited by the provisions set forth in 28 U.S.C. §§ 157 and 1334. If an adversary proceeding does not fall within those parameters, then the Bankruptcy Court will not have jurisdiction over the proceeding irrespective of whether the *Rooker-Feldman* doctrine applies. In Civil Action No. 13-1646, Magistrate Judge Kelly had no occasion to opine on the jurisdictional issue that was presented to the Bankruptcy Court. Accordingly, the Bankruptcy Court did not err by "failing to acknowledge" her ruling.

Smalis also argues that the Tax Injunction Act did not preclude the Bankruptcy Court from reviewing his challenges to the assessed values of his commercial properties. To that end, he cites *In re Hechinger Inv. Co. of Delaware, Inc*., 335 F.3d 243 (3d Cir. 2003), for the proposition that "the Tax Injunction Act does not prevent a Bankruptcy Court from enforcing the provisions of the Bankruptcy Code that affect the collection of state taxes." *See id.* at 247 (citing authority); *see also* Doc. 3 at p. 20 of 28. Whether or not the Tax Injunction Act presented an independent jurisdictional bar to some or all of Smalis' claims in this litigation is irrelevant in light of this Court's conclusion that those claims did not fall within the parameters of the Bankruptcy Court's limited subject matter jurisdiction pursuant to 28 U.S.C. §1334.

Moreover, because the Bankruptcy Court properly dismissed Smalis's adversary proceeding for lack of subject matter jurisdiction, there is no basis for this Court to address Smalis' remaining issue on appeal, all of which involve merits-based questions – *to wit,* whether

---

[6] While Magistrate Judge Kelly found that *Rooker-Feldman* did not pose such a constraint, she also found that the Tax Injunction Act, 28 U.S.C. §1341, did. *See* Doc. 3-6 at pp. 10-13, 2014 WL 2039964, at *6-8.

Smalis was entitled to a determination of his tax liability pursuant to 11 U.S.C. §505(a), whether he could properly assert a claim for recoupment of overpaid property taxes pursuant to 11 U.S.C. §553, and whether his due process rights were violated when the Allegheny County Board of Property Assessment Appeals and Review failed to notify him of a change of assessment relative to his commercial properties.

## IV. Conclusion

Upon a thorough review of the record and consideration of Smalis' arguments on appeal, this Court finds no error of law or misapplication of law to facts in the Bankruptcy Court's rulings. Accordingly, based on the foregoing law and authority, the Court hereby **AFFIRMS** the April 25, 2016 Order of the Bankruptcy Court dismissing Adversary Action No. 15-2182-CMB for lack of subject matter jurisdiction. In addition, the Court hereby **AFFIRMS** the Bankruptcy Court's May 11, 2016 and May 19, 2016 Orders denying Smalis' motions for post-dismissal relief. The Clerk shall mark this case **CLOSED**.

**So Ordered,** this 25th day of August, 2016.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties